ELIZA O'FLAHERTY *et al*, Respondents, *vs.* SANFORD B. KELLOGG, Appellant.

1. *Recorders of land—Confirmations prima facie correct.*—Recommendations of United States Recorders of land titles, confirmed by act of Congress, undoubtedly carry the title to land, and the surveys made in accordance with these confirmations are *prima facie*—not conclusively—correct.

2. *Practice, Supreme Court—Evidence introduced out of time.*—An objection to evidence as being introduced out of time, will not be considered by the Supreme Court.

*Appeal from St. Louis Circuit Court.*

*S. Knox*, for Appellant.

*Bakewell & Farish*, for Respondents.

NAPTON, Judge, delivered the opinion of the court.

This was an ejectment to recover 4½ feet of ground fronting on Third street, and lying south of Poplar street, and the plaintiffs under instructions from the court had a verdict and judgment.

To understand the point in controversy, it is sufficient to state that one Baccane had a Spanish grant of 120 by 150 feet, French measure, fronting on Third street, which was confirmed by the United States, but upon a survey of this confirmation by the United States surveyor, instead of being 120 feet French, (which would be 128 $\frac{4}{12}$ English) there were only 121 $\frac{3}{12}$ feet English, bounded north by Poplar street.

In April, 1816, Belliseme (who bought of Baccane) sold to Baltut 60 French (or 64 $\frac{2}{12}$ feet English) from the southern line of his lot, and on 18th of June, 1816, he sold to Bouvet 60 feet French, assumed to be the northern half. But if the United States survey is to govern, it is plain he had in June, 1860, only 57 $\frac{1}{12}$ feet English left, having previously conveyed to Baltut 60 feet French, (or 64 $\frac{2}{12}$ feet English.) Bouvet conveyed to Lemont, and, therefore, Lemont's southern line was 57 $\frac{1}{12}$ feet English, south of Poplar street.

In 1847, Baltut's legal representative, Mrs. Boyer, conveyed to Th. J. White, under whom Kellogg claims 32 English feet on Third street, bounded north by Lemont.

After this sale to White, Baltut's legal representative, (Mrs. Boyer) in 1851, conveyed to O'Flaherty 60 feet front, French, by 160 in depth, bounded on the west by Third street, on the north by a lot claimed or owned by Simons, etc. In other words, Mrs. Boyer conveyed to O'Flaherty whatever remained of her 60 feet French, after the 32 feet English previously conveyed to White. So that the plaintiffs and defendant both claim under Mrs. Boyer, the representative of Baltut.

In 1849, two years after the conveyance to White, (under whom Kellogg derived title) Lemont took possession of his lot on the north end of the block and erected buildings on it, the south wall of which was 60 feet French or 64 $\frac{2}{12}$ English from Poplar street—whereas, his lot was only 57 $\frac{1}{2}$ English from Poplar, thus encroaching on White's lot about 7 feet. This suit was brought to recover the 4 $\frac{1}{2}$ feet which Kellogg had recovered in ejectment against one Chenot, and the record of the judgment in the case against Chenot was pleaded as a bar to this action; but that portion of the answer which set up this as a bar was stricken out on motion by the court.

On the trial, the court gave the following instructions at the instance of the defendant:

" If the court, sitting as a jury, believe from the evidence that Belliseme owning at the time 121 $\frac{3}{12}$ feet on the east side of Third street, in block 53, bounded north by Poplar street, executed and delivered to Bouvet a deed for 60 feet French measure on the east side of Third, bounded north by Poplar street, and that Lemont acquired under Bouvet; and that before said conveyance to Bouvet said Belliseme had conveyed 60 feet French, which is 64 $\frac{2}{12}$ English, to Baltut, being the southern portion of such 121 $\frac{3}{12}$ feet so owned by Belliseme of the same depth, then, for the purpose of this suit, the southern line of Lemont's lot must be fixed at such a distance from Poplar street less than 60 feet French, or 64 $\frac{2}{12}$ feet English, as will give to Baltut and his representatives the whole amount of 64 $\frac{2}{12}$ feet English on Third street, and leave to Lemont, as representative of Bouvet, a lot fronting on Third street so many feet only as may be left after deducting from the whole Third street frontage of the

original lot of 121 $\frac{3}{12}\frac{3}{8}$ feet English, owned by Belliseme, the 60 feet French first conveyed by him to Baltut." This was the only instruction given.

The defendant asked the following instructions:

1. If the jury believe from the evidence that on the 6th of April, 1816, Alex. Belliseme was the owner of a piece of ground, 120 feet French measure on the east side of Third street by 150 feet French measure on the south side of Poplar street, and bounded north by Poplar street and west by Third street; that by deed of that date read in evidence, he conveyed to H. Baltut 60 feet French measure by 150 feet deep, bounded on the west by Third street and on the north by the grantor, being the south half of said larger tract; and that said Belliseme by deed dated June, 1816, conveyed the north half of said piece of ground to J. B. Bouvet, having 60 feet French measure on Third street, and bounded north by Poplar street; and that Pelagie Boyer, widow of Henry Baltut, as survivor under the marriage contract read in evidence, became the owner of said south half, and in October, 1816, entered into possession thereof, her north line being coincident with the south line of said north-half, 60 feet French south of Poplar street; that she so continued in possession till November, 1847, when she conveyed to T. J. White 32 feet front English measure by 160 feet deep, bounded on the north by Lemont, who holds under said Bouvet, and west by Third street; and that said defendant Kellogg is in possession of said 32 feet, claiming title by *mesne* conveyances under said White; and that the plaintiff claims title to the 4½ feet of ground in question by a subsequent deed from said Pelagie Boyer, dated January, 1857, purporting to convey the south-half of said tract, that is to say, 60 feet French measure on Third street, and bounded north by Lemont and west by Third street; said deed was effective to convey only so much of said land as remained after deducting 32 feet English measure conveyed to White, and they will find for the defendant.

2. If the jury believe from the evidence that the plaintiff and defendant claim title to the strip of ground in question

under a common grantor, Pelagie Boyer, which is a part of a larger tract of 60 feet French, fronting on Third street; that said grantor went into possession of said piece of ground in October, 1816, her north line being 60 feet French south of Poplar street, and so continued in possession until November 1847, when she conveyed to one White, under whom defendant holds 32 feet English measure, fronting on Third street, by 160 feet deep, and bounded north by Lemont's line aforesaid, which is 60 feet French south of Poplar street, and west by Third street; and that subsequently in January, 1851, she conveyed to plaintiff 60 feet French, bounded north by Lemont's line aforesaid, and west by Third street, the plaintiff can recover in this action no part of said 32 feet, and is estopped from denying that the said north line of Boyer and the south line of Lemont are coincident and located in accordance with their deeds and long continued possession of a piece of ground, the northern portion of which was 60 feet French measure south of Poplar street, and bounded west by Third street, and the said Boyer then claiming that her possession extended to the northern line of her lot; and if the jury believe that Lemont and those claiming under him were in the possession of the lot of ground extending 60 feet French south of Poplar street to the said lot of Boyer, claiming his southern boundary line to be on the lot so possessed as aforesaid, by said Boyer; and that while the said parties were in possession as aforesaid, the said Boyer executed the deed to said White, read in evidence, conveying to said White 32 feet front, English measure, on Third street, and bounded on the north by said Lemont, then said O'Flaherty is not entitled under deed from said Boyer to any portion of the 32 feet, commencing 60 feet (French) south of Poplar street, running thence south along Third street, and bounded north by said Lemont. The deed to White from Boyer, dated November, 1847, was effective to pass to said White 32 feet of her said land, fronting on Third street, and bounded north by land then in the possession of Lemont, running thence south, etc.; and the deed of Boyer to O'Flaherty, read in evidence, did

not vest in said O'Flaherty any right or title to any portion of said 32 feet, etc.

These instructions were refused and the defendant duly excepted.

This would seem to be a very plain case, unless the court is at liberty to reject the United States survey of this block 53. Some questions are attempted to be raised by the defendant's instructions concerning possession, agreed line and estoppel, but we are unable to see how they could possibly affect the present controversy had there been any evidence to justify them. Had the controversy been between Lemont, who adjoined the defendant. or his grantors on the north and the defendant, they might properly come in—but in this case, in which the controversy is between the defendant and his neighbors on the south, we cannot see their applicability.

The deed to defendant's grantor (White) conveys to him 32 feet English, commencing at the south line of Lemont—and the only question then in locating his lot, is to ascertain Lemont's south line. That is fixed by the survey at the distance of $57\frac{1}{12}$ feet from Poplar street, and it could not possibly be placed anywhere else if the southern line of the block was at a distance of $121\frac{3}{12}$ from Poplar—or in other words, if the block only contained $121\frac{3}{12}$ feet instead of 120 feet French measure; for Belliseme had before the conveyance to Lemont's grantor conveyed 60 feet French from the southern portion of his lot, and there were then only $57\frac{1}{2}$ feet English left to be conveyed, and, of course, Lemont only acquired that number of feet from Poplar, and his south line is necessarily placed, as the surveyor placed it, at $57\frac{1}{2}$ feet English from Poplar street.

Now, because Lemont in 1849 or thereabouts, in his enclosure or buildings on his lot encroached on Mad. Boyer some 6 or 7 feet, and she perhaps acquiesced in this encroachment, it is claimed therefore that White, who bought from Mad. Boyer 32 feet English, running south from Lemont's southern line, may adopt and agree to this encroachment, and in order to get his 32 feet, may compensate himself for his

loss on the north end of his lot and take the loss from his southern neighbor, on the ground that the deed to the latter was two years later than his. This, of course, could not be seriously urged, unless the deed to White which calls for Lemont's southern line as White's northern line, is to be construed as not calling for the real southern line of Lemont, but for such line as Lemont chose two years after White's purchase to adopt as his southern line.

The instructions asked by the defendant are clearly erroneous, because, apart from other objections, they are based on assumptions of fact, which the evidence had no tendency to sustain,—or on questions of fact which might have been pertinent in a dispute between Lemont and White's representatives, or Mrs. Boyer, but which could certainly not affect the plaintiffs. The first instruction is based on the finding that the block 53 had 120 feet French measure on Third street—whereas, it had only 121 $\frac{1}{12}$ English feet, according to the United States survey.

The recommendations of Recorder Bates, confirmed by the act of 1816, undoubtedly carried the title; but in all, or nearly all his recommendations, and the confirmation which folowed, there was an order "to be surveyed." We do not maintain that these surveys are conclusive and cannot be shown to be erroneous, but they certainly have always been regarded as *prima facie* evidence; and in this case there was no attempt whatever to question the propriety of the survey. Indeed, the plaintiff introduced the county surveyor, Mr. Pitzman, who established Lemont's southern line as fixed by the government survey.

This evidence was objected to as introduced out of time, but that is not a matter for review in this court.

The instruction given for the plaintiff was correct, and the judgment must be affirmed. The other judges concur.